[Cite as *In re D.J.*, 2025-Ohio-5420.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | No. 25AP-196 |
| D.J., | : | (C.P.C. No. 22JU-10497) |
| [D.M., | : | (ACCELERATED CALENDAR) |
| Appellant]. | : | |
| In the Matter of: | : | No. 25AP-197 |
| K.M., | : | (C.P.C. No. 22JU-10498) |
| [D.M., | : | (ACCELERATED CALENDAR) |
| Appellant]. | : | |
| In the Matter of: | : | No. 25AP-224 |
| K.M., | : | (C.P.C. No. 22JU-10498) |
| [A.N., | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on December 4, 2025

**On brief:** *Robert J. McClaren*, for appellee Franklin County Children Services.

**On brief:** *Jonathan W. Klein*, for appellant D.M.

**On brief:** *William T. Cramer*, for appellant A.N.

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations and Juvenile Branch

DORRIAN, J.

{¶ 1}    Appellants D.M. and A.N. appeal from judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, granting permanent custody of minor children, D.J. and K.M., to appellee Franklin County Children Services ("FCCS" or "the agency").  Because we conclude the juvenile court's decision was supported by competent, credible evidence and D.M. was not denied effective assistance of counsel, we affirm.

## I.  Facts and Procedural History

{¶ 2}    D.M. is the mother of four children, including D.J. and K.M.  A.N. is the father of K.M.

{¶ 3}    On March 12, 2021, FCCS filed its first complaint in Franklin C.P. Nos. 21JU-2545 and 21JU-2551 alleging that D.J. and K.M. were abused, neglected, and dependent children, and seeking temporary custody.  In March 2021, the children were placed into the temporary custody of FCCS.  Between March 2021 and October 2022, the cases were dismissed and refiled multiple times, and the children remained in the temporary custody of FCCS.  On October 24, 2022, complaints were filed in the underlying cases for D.J. and K.M. in Franklin C.P. Nos. 22JU-10497 and 22JU-10498, respectively.

{¶ 4}    On December 19, 2022, a magistrate of the juvenile court found D.J. and K.M. to be dependent minors.  The court extended the case plans already in effect as well as the agency's temporary custody of the children.

{¶ 5}    On January 27, 2023, FCCS filed a motion seeking permanent custody of D.J. and, on January 30, 2023, a motion seeking permanent custody of K.M.

{¶ 6}    On January 2, 2024, the guardian ad litem for the children filed an updated report recommending that permanent custody be granted to FCCS and that the children remain with their foster placement, their only placement since the cases were initiated in March 2021.

{¶ 7}    The juvenile court conducted a hearing on the motions for permanent custody on April 18 and May 30, 2024.  At the hearing, FCCS presented testimony from an agency caseworker.  Appellants also testified as witnesses at the hearing.  A guardian ad litem for the children and for D.M. testified as did the paternal grandmother of K.M.

{¶ 8}    Following completion of the hearing, on January 31, 2025, the juvenile court issued a judgment granting permanent custody of D.J. and K.M. to FCCS.

## II.  Assignments of Error

{¶ 9}   D.M. appeals and assigns the following two assignments of error for our review:

> [I.] Appellant was prejudicially deprived of her United States and Ohio constitutional rights to a fair trial due to the ineffective assistance of counsel.
>
> [II.] Appellant was denied effective assistance of counsel when her attorney failed to object to the introduction of numerous hearsay statements and other improper evidence.

{¶ 10}   A.N. appeals and assigns the following sole assignment of error for our review:

> Father's Due Process rights were violated by the agency's failure to make reasonable efforts toward reunification.

## III.  Discussion

### A.  Standard of Review in Permanent Custody Cases

{¶ 11}   The right to parent one's child is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution. *In re A.J.*, 2014-Ohio-5046, ¶ 18 (10th Dist.), citing *In re C.F.*, 2007-Ohio-1104, ¶ 28, and *In re Hockstok*, 2002-Ohio-7208, ¶ 16.  However, the state possesses broad authority to intervene to protect children from abuse and neglect and may seek an award of permanent custody of a child, which terminates parental rights. *See In re C.F.* at ¶ 28, citing R.C. 2151.01.  "Because an award of permanent custody is the most drastic disposition available under the law, it is an alternative of last resort and is only justified when it is necessary for the welfare of the children." *In re* [*E.S.*], 2003-Ohio-5446, ¶ 26 (10th Dist.), citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979).

{¶ 12}   Under R.C. 2151.414(B)(1), a court may grant permanent custody of a child to an agency if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and one of five specific conditions set forth in the statute applies to the child.  "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal

cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 13} On appeal, we will not reverse a court's determination of a permanent custody motion unless it is against the manifest weight of the evidence. *In re M.E.V.*, 2009-Ohio-2408, ¶ 10 (10th Dist.). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. In conducting our review, every reasonable presumption must be made in favor of the trial court's findings of fact and judgment. *In re* [*H.B.*], 2004-Ohio-3887, ¶ 59 (10th Dist.), citing *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). "[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." *Karches* at 19. Moreover, " '[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' " *In re* [*A.H.*]*,* 2000 Ohio App. LEXIS 2813 (10th Dist. June 27, 2000), quoting *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist. 1994).

### B.  D.M.'s Assignments of Error

{¶ 14} Both of D.M.'s assignments of error argue that her counsel rendered ineffective assistance of counsel.

{¶ 15} The right to counsel, which is guaranteed to parents at all stages of a permanent custody proceeding, includes the right to effective assistance of counsel. *In re M.A.*, 2021-Ohio-1078, ¶ 35 (10th Dist.). "The two-part test for ineffective assistance of counsel used in criminal cases, announced in *Strickland v. Washington,* 466 U.S. 668, (1984), is 'equally applicable in actions by the state to force the permanent, involuntary termination of parental rights.' " *In re M.A.* at ¶ 35, quoting *In re S.G.*, 2010-Ohio-5722, ¶ 18 (10th Dist.).

{¶ 16} To establish ineffective assistance of counsel under *Strickland*, D.M must demonstrate that counsel's performance was deficient, and that the deficient performance

resulted in prejudice. *Strickland* at 687. Deficient performance can be demonstrated by "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Prejudice is demonstrated by proving " 'there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' " *State v. Griffin*, 2011-Ohio-4250, ¶ 42 (10th Dist.), quoting *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶ 17} In her first assignment of error, D.M. argues that she was prejudicially deprived of her rights to a fair trial due to the ineffective assistance of counsel because her counsel allowed the hearing to begin without her being present. D.M. argues that she should have been physically present in court during the hearing.

{¶ 18} D.M. was incarcerated at the time of the permanent custody hearing. The same constitutionally protected right of a natural parent to be present at a permanent custody hearing extends to an incarcerated parent, but the right may not be absolute. *In re [S.S.]*, 2002-Ohio-368, ¶ 11 (10th Dist.); *see also In re O.P.*, 2025-Ohio-238, ¶ 30 (10th Dist.). Regarding an incarcerated parent, we have recognized "that the parent's due process rights are not violated when the parent is represented at the hearing by counsel, a full record of the hearing is made, and any testimony that the parent wishes to present could be presented by deposition." *Id.*

{¶ 19} On the day the permanent custody hearing was scheduled to begin, D.M.'s counsel informed the court that the Sheriff's Office had informed her they would only convey an incarcerated individual for appearance at a criminal matter. D.M.'s counsel had attempted to arrange with the correctional facility in which D.M. was incarcerated a way for D.M. to attend the hearing by video link, but the facility did not connect with the court at the time the hearing started. The trial court continued the hearing to the next day.

{¶ 20} On April 18, 2024, D.M.'s counsel had the following discussion with the court at the beginning of the hearing:

> [D.M.'s COUNSEL:] I will say just for the record, my client wants to appear but the facility that she in in was unable to get her in the Zoom like they have; they outsource it, and someone has to come and get her and get her to the Zoom spot and they were not able to accomplish that from yesterday. But it is not an unwillingness to be here, for the record.

[TRIAL COURT:] All right. But you feel comfortable knowing her wishes, ma'am?

[D.M.'s COUNSEL:] Yes, and she is okay with me starting today and I told her I would retry with the facility for the next hearing date.

(Apr. 18, 2024 Tr. at 6.) The trial court then proceeded with the first day of the hearing.

{¶ 21} On May 30, 2024, the second and final day of the permanent custody hearing, D.M. appeared for the hearing via Zoom, and she was able to present her testimony.

{¶ 22} On these facts, we find that D.M. has not established that her counsel's failure to object to D.M.'s inability to be physically present at the hearing deprived her of her due process rights. D.M. was represented by counsel at each day of the permanent custody hearing. Additionally, on the day D.M. was unable to attend via Zoom, D.M.'s counsel represented that D.M. had agreed to the hearing moving forward without her. D.M. has not cited anything in the record to indicate that her attendance by Zoom on the second and final day of the hearing was interrupted or did not otherwise allow her to participate, and in fact, she was able to provide her testimony when she appeared by Zoom.

{¶ 23} While we acknowledge a parent's right to be present at the permanent custody hearing, we do not find in the circumstances of this case that D.M. has established that she was deprived of effective assistance of counsel by her counsel allowing the hearing to proceed without D.M.'s physical presence in the courtroom. Therefore, we overrule D.M.'s first assignment of error.

{¶ 24} In her second assignment of error, D.M. argues that she was deprived of the effective assistance of counsel when her attorney failed to object to hearsay statements and improper evidence. Specifically, D.M. argues that the following actions or omissions of her counsel demonstrate error:

- Counsel failed to object on hearsay grounds when the caseworker was asked about changing the child's placement, whether a home study had passed, what services D.J. receives, and about the children's wishes;

- Counsel failed to object on foundation grounds when the caseworker and guardian ad litem were asked about the children's bond with a sibling;

- Counsel failed to properly cross-examine the caseworker regarding the timeline between the completion of the first ICPC (Interstate Compact) and the time to conduct another one;

- Counsel failed to object when the caseworker and guardian ad litem testified beyond the scope of their observations;[1]

- Counsel failed to object to FCCS exhibit Nos. 5 through 9 and 11 through 18 because there was no foundation or testimony regarding the exhibits.[2]

{¶ 25} We do not find that D.M. has demonstrated that her counsel was ineffective on these grounds. To succeed on a claim of ineffective assistance of counsel based on counsel's failure to file an objection, an appellant must demonstrate that the objection had a reasonable probability of success. *State v. Jones*, 2019-Ohio-2134, ¶ 52 (10th Dist.), citing *State v. Johns*, 2011-Ohio-6823, ¶ 25 (10th Dist.). Stated another way, if the objection would not have been successful, the appellant cannot prevail on an ineffective assistance claim. *Id.* Additionally, the Supreme Court of Ohio has held that it "will not second-guess trial strategy decisions, and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Mason*, 82 Ohio St.3d 144, 157-58 (1998), quoting *Strickland*, 466 U.S. at 689.

{¶ 26} We find that D.M. has not demonstrated that the omitted objections would have had a reasonable probability of success. We also do not find that the scope of cross-

---

[1] D.M.'s brief does not include a discussion in support of her conclusory statements such as, "Counsel failed to object when the caseworker went beyond what she observed and started talking about trauma," and "Counsel failed to object when the [guardian ad litem] went beyond what he observed and started talking about a bond between foster parents and child and foster children and children." (D.M.'s Brief at 11-12.) D.M. instead cites the caseworker's testimony at the hearing about D.J.'s interaction with her foster parents, during which the caseworker noted, "They have a very open policy with [D.J.] to be able to talk and be able to tell them anything without her getting into any trouble because of her past trauma when it comes to physical abuse so she can tell them anything without getting in trouble[.]" (April 18, 2024 Tr. at 68.) Even if the testifying caseworker had not personally observed physical abuse to D.J., "[i]t is not error for a social worker to testify to reports that predated his or her assignment to a particular case," and a social worker may "competently testify to the contents of the agency's case file." *In re S.C.-N.*, 2022-Ohio-3064, ¶ 88-89 (10th Dist.). The complaint in D.J.'s case alleges that D.J. was injured as the result of physical abuse by D.M. Additionally, D.M. has cited as objectionable the guardian ad litem's testimony about the children's bond with the foster parents and the other children in the foster home with whom the children had a sibling relationship. The guardian ad litem testified, however, that he observed the children interacting together and with the foster parents.

[2] FCCS exhibit Nos. 5 through 9 are copies of judgment entries of D.M.'s criminal convictions as well as a printout from the Ohio Department of Rehabilitation and Correction stating D.M.'s expected release date. FCCS exhibit Nos. 11 through 18 are the orders of temporary custody granted in the cases opened between the agency's removal of the children from the home and prior to the underlying cases on which this appeal is based.

examination demonstrated that counsel's conduct fell below the acceptable standard of reasonable professional assistance. Moreover, D.M. has not demonstrated that, were it not for the alleged errors, the result of the trial would have been different. Accordingly, we do not find that D.M. has established that her counsel's assistance was ineffective and, therefore, we overrule her second assignment of error.

### C. A.N.'s Assignment of Error

{¶ 27} In his sole assignment of error, A.N. argues that his due process rights were violated by the agency's failure to make reasonable efforts at reunifying K.M. with A.N. A.N. acknowledges that the court, in its December 19, 2022 entry regarding temporary custody, found that reasonable efforts were made to prevent or eliminate the need for K.M.'s removal. (A.N.'s Brief at 2.) The brief also acknowledges that A.N. was incarcerated in Maryland throughout the proceedings. But A.N. argues the agency did not do enough and that the efforts it did take were not reasonable ones. (A.N.'s Brief at 18.)

{¶ 28} R.C. 2151.419(A)(1) provides that, at specified hearings, the juvenile court must determine whether a public children services agency "has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." R.C. 2151.419(A)(1) does not refer to permanent custody hearings and, therefore, it "does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413." *In re C.F.*, 2007-Ohio-1104, ¶ 43. "However, except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights." *Id.* "If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.*

{¶ 29} "Reasonable efforts do not equate to all available efforts." *In re D.D.*, 2023-Ohio-4147, ¶ 25 (10th Dist.), citing *In re B.F.*, 2021-Ohio-4251, ¶ 11 (3d Dist.). " 'Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible.' " (Internal quotations and citations omitted.) *In re D.D.* at ¶ 25, quoting *In re B.F.* at ¶ 11.

{¶ 30} We find that the record reflects the trial court made reasonable-efforts findings in its December 19, 2022 entry when K.M. was adjudicated dependent and

committed to the temporary custody of FCCS.[3]   We note that A.N. did not file objections to or otherwise challenge that entry.  *See In re Bil.I.*, 2023-Ohio-434, ¶ 29 (10th Dist.) (noting that the reasonable efforts finding earlier in the proceeding made it unnecessary for the trial court to make a reasonable efforts finding in the permanent custody decision). Additionally, in its permanent custody decision, the trial court concluded that, "[d]espite reasonable and diligent case planning, the circumstances and behaviors that gave rise to this case reopening have not been abated."  (Jan. 31, 2025 Decision & Jgmt. Entry at 8.) With respect to A.N., the trial court found that he "failed to complete the essential components of the case plan to allow reunification with [K.M.]," and that the "issues that initiated the Child's removal have not been alleviated or mitigated."  (Emphasis omitted.) (Jan. 31, 2025 Decision & Jgmt. Entry at 11.)

{¶ 31}  The trial court also included in its decision findings regarding its consideration of the factors in R.C. 2151.414(E).  That provision states that the trial court, in a permanent custody hearing held under R.C. 2151.414(A), must consider all relevant evidence in determining whether a child cannot be placed with either parent within a reasonable period of time.  R.C. 2151.414(E).  "To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine 'the reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time."  *In re C.F.*, 2007-Ohio-1104, at ¶ 42.  R.C. 2151.414, however, does "not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody."  *Id.*

{¶ 32}  If the court finds, by clear and convincing evidence, that one or more of the scenarios enumerated in R.C. 2151.414(E)(1) through (16) exist as to each of the child's parents, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent."  R.C. 2151.414(E). Any one of the enumerated factors in R.C. 2151.414(E) is sufficient grounds for the trial court to determine that K.M. could not be placed with A.N. within a reasonable time.  *See In re C.F.* at ¶ 50.

---

[3] As noted above, A.N. acknowledged the trial court's reasonable-efforts finding in its December 19, 2022 entry.

{¶ 33} Here, the trial court found that "FCCS presents clear and convincing evidence at trial as to the existence of factors [R.C. 2151.414] (E)(1), (E)(2), (E)(4), (E)(10), (E)(13) and (E)(16)." (Jan. 31, 2025 Decision & Jgmt. Entry at 13.)  Specifically, the trial court found that appellants had "placed themselves in a position through their incarceration that places them in a situation where they cannot take care of the children in the foreseeable future," noting that A.N. was incarcerated through the duration of the proceedings and had failed to maintain contact with K.M. even by means available to him.  (Jan. 31, 2025 Decision & Jgmt. Entry at 13-14.)

{¶ 34} To the extent that A.N.'s argument challenges the trial court's findings under R.C. 2151.414(E), we conclude that the trial court's findings are supported by the record. The first time A.N. talked to K.M. was for 30 minutes on May 6, 2024.  At the permanent custody hearing, A.N. testified that he was incarcerated beginning November 4, 2018, and at the time of the hearing date, he was hoping to be released to a six-month re-entry program.  He said he had no direct communication with the agency caseworkers during his incarceration but he did with the guardian ad litem.  A.N. said that he could have provided the agency information on family members willing to care for K.M. if the agency had contacted him.

{¶ 35} At the permanent custody hearing, the trial court also heard testimony from a caseworker from FCCS who testified that she tried to contact the facility in which A.N. was incarcerated on two occasions by email sent to the person at the facility who A.N. had instructed her to contact.  The caseworker also testified that she did not have direct contact with A.N. because she had no way to contact him at the facility independent of establishing correspondence with the facility representatives that she was told to contact.  When the caseworker was asked whether she could have contacted the warden, she testified as follows:

> [I]f a parent wants to contact me, I have parents contact me all the time from prison. They find -- their wardens from jail they call -- email me and say they need to contact me. If they need to visit, whatever. It's an out of state prison, I had no contact information from [A.N.] When I did, I emailed them the first time and said, look [A.N.] is wantin' (sic) to do phone visits. Please someone email me and let me know what we need to -- what are the steps in order for us to get him set up with phone

conversations with his daughter. No one emailed me back. When we came back to court, he asked again, he informed of who needed to be reached out again. You were also in the email, no one responded, you didn't respond, no one else responded to reach out to try to get him in contact with his daughter. So I'm not sure what else I was supposed to do.

(Apr. 18, 2024 Tr. at 83.)

{¶ 36} The trial court also heard testimony from an FCCS caseworker regarding the agency's efforts to inquire about placement of K.M. with her paternal grandmother in Maryland. As part of that inquiry, FCCS reached out to Maryland for it to conduct a home study, a requirement for an out-of-state placement. The home study was denied because the household had been involved with that state's children's services agency regarding allegations of sexual abuse and criminal conduct involving another adult in the home. As a result, FCCS could not move forward with a placement of K.M. in that home. The FCCS caseworker also testified that K.M.'s paternal grandmother had submitted an adoption packet but that it was up to the agency's adoptions department whether they would move forward with the application after a permanent custody ruling. The guardian ad litem testified that he believed K.M.'s paternal grandmother had last seen K.M. face-to-face in 2020, prior to the events giving rise to agency involvement with K.M., and had at least five other children in the home.

{¶ 37} On the circumstances of this case, we cannot say that the trial court's reliance on the reasonable efforts findings made prior to the permanent custody hearing or its consideration of the factors in R.C. 2151.414(E) were not supported by the record. As a result, we cannot find that A.N.'s due process rights were violated. Accordingly, we overrule A.N.'s sole assignment of error.

## IV. Conclusion

{¶ 38} For the foregoing reasons, we overrule D.M.'s two assignments of error and A.N.'s sole assignment of error and affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgments affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

———————————